IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LEUA NOUANEPHOUMIVANH,

      Plaintiff,                     No. CIV S-07-1368 EFB

      vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                <u>ORDER</u>
_____/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). For the reasons discussed below, the court denies plaintiff's motion for summary judgment or remand, and grants the Commissioner's cross-motion for summary judgment.

I. <u>BACKGROUND</u>

      Plaintiff, born January 1, 1963, applied for supplemental security income on September 17, 2004. Administrative Record ("AR") 50. Plaintiff alleged that she became unable to work on January 13, 2002, AR 50, due to "headaches, lost memories pain all over numbness all body," and "[m]y legs are numb and I cannot move," AR 57. At the time of her application for benefits, plaintiff was forty-one years old, and had last worked as a furniture sander from 2000 to June

1

2001. AR 58. Plaintiff's husband passed away in 1994. AR 57.

The initial administrative hearing, convened July 17, 2006, was postponed at the suggestion of the administrative law judge in order to provide plaintiff further opportunity to obtain representation. AR 219-221. With the assistance of counsel and an interpreter, plaintiff testified at the administrative hearing held October 3, 2006, before administrative law judge ("ALJ") Plauche F. Villere, Jr. AR 222-232.

Plaintiff testified that she has had no formal education, and cannot read or write in any language. AR 225. Plaintiff stated that she has five children, the youngest age 15. Plaintiff cares for her own personal needs, shops with her children, cooks simple food and does light housework; she has never driven a car. AR 226. Plaintiff testified that she worked outside the home, as a table sander, for about two years, about four or five years before, but quit due to numbness and pain in her legs and arm; she stated that she felt "paralyzed." AR 226-227. Prior to the sanding job, plaintiff worked for less than a year in food processing, cutting and packing fruits and vegetables; she quit because of the cold. AT 230. Plaintiff explained that her diabetes causes the numbness in her legs and arm; and that she was in an auto accident ten years before that also causes "back pain, body pain too." AR 227. Plaintiff's doctor prescribed medication that provides temporary relief; plaintiff also takes medication for her diabetes and allergies, and takes Tylenol. AR 228. Plaintiff testified that she also has headaches, "morning and evening" "right on top of my eyes." The headaches are accompanied by dizziness, and they last four or five hours. Plaintiff treats her headaches by taking medication and lying down. AR 227-228.

Plaintiff testified that she is forgetful; that she will forget her children's names. AR 229. She testified that she is depressed all of the time, which is treated with a sleeping pill that "works." Plaintiff has not sought counseling. *Id.* Plaintiff's attorney noted at the administrative hearing the report of a consultative psychiatrist that plaintiff "hears voices," but the ALJ noted that the report reflected only mild impairments. AR 230-231. The ALJ left the record open to receive a statement from one of plaintiff's children, AR 231, which was not forthcoming.

Plaintiff's counsel rejected the opportunity to examine plaintiff, with the assistance of the interpreter, at the administrative hearing. AR 230.

The ALJ issued a decision on November 21, 2006, finding that plaintiff was not disabled.[1] AR 11-17. The ALJ made the following findings (AR 13-17):

    1. The claimant has not engaged in substantial gainful activity since January 13, 2002, the alleged onset date (20 C.F.R. 416.920(b) and 416.971 et seq.).

    2. The claimant has the following medically determinable impairments: back strain, headaches, depression and somatoform disorder (20 C.F.R. 416.920(c)).

    3. The claimant does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 C.F.R. 416.921). . . . [T]he claimant's medically determinable impairments could reasonably be expected to produce

---

[1] Disability Insurance Benefits ("DIB") are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.* Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq.* Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

    Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

    Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

    Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

    Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater,* 81 F.3d 821, 828, n. 5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Bowen*, 482 U.S. at 146, n. 5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible.

4. The claimant has not been under a "disability," as defined in the Social Security Act, since September 17, 2004 (20 C.F.R. 416.920(c)), the date the application was filed.

On May 11, 2007, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. AR 3-5.

II. ISSUES PRESENTED

Plaintiff contends that substantial evidence does not support the Commissioner's finding, at step-two of the sequential evaluation, that plaintiff does not have a severe impairment or combination of impairments, because the ALJ failed properly to: (1) evaluate the medical evidence, improperly relying on the opinion of psychiatrist Reynaldo Abejuela, M.D., rather than the opinion of psychologist Michelina Regazzi, Ph.D., and (2) assess plaintiff's testimony and third party statements, particularly with respect to plaintiff's alleged mental impairments. Plaintiff claims that the record demonstrates she has "the severe impairments of depression [and] Somatoform disorder."[2] Pl.'s Mem., at p. 2.

III. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

---

[2] Plaintiff's counsel stated in full that the record demonstrates plaintiff has "the severe impairments of depression, Somatoform disorder, moderate-to-severe bilateral sensorineural hearing loss, mild-to-moderate retardation, major depressive disorder, and psychotic disorder." Pl.'s Mem., at p. 2. However, counsel's reference to "moderate-to-severe bilateral sensorineural hearing loss, mild-to-moderate mental retardation, major depressive disorder, and psychotic disorder," appear to be in error. Counsel does not further reference or develop these matters, and this court has found no reference to these findings in the record. It appears, therefore, that plaintiff claims only that the record demonstrates she has the severe impairments or combination of impairments of depression and somatoform disorder.

4

1  The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## IV. MEDICAL EVIDENCE

### A. TREATMENT HISTORY

Plaintiff was treated by Dr. Anh Huynh Nguyen, M.D., from December 1999 to October 2004. AR 135-153.  Of the impairments alleged in her disability application (i.e., not including routine matters such as nasal congestion), plaintiff sought treatment for headache and neck pain in January 2001, headache in July 2000, low back pain in April 2001, low back pain and headache in February 2002, headache in April 2002, and muscle spasm and cervical neck pain in January 2003. AR 135-136.  X-rays of plaintiff's cervical spine taken June 2003 were normal. AR 139.

Plaintiff was treated by Dr. David Tam Ha, M.D., from March to September 2004, throughout which she complained of leg, arm, neck and back pain. AR 123-134.  Additional treatment notes from Dr. Ha, April 2005 through August 2006, also reflect plaintiff's complaints of back pain, headaches, numbness in her arms, legs, shoulders and hands. AR 200-216.

The records of Drs. Nguyen and Ha are difficult to decipher regarding objective findings and responsive treatment.  Plaintiff correctly discerns findings of muscle tenderness (AR 142,

5

146, 149), a diagnosis of arthralgia (joint pain) (AR 202, 203, 206), and isolated prescriptions for Valium for anxiety (AR 170), and Ibuprofen for back pain (AR 216).  While referral to a neurologist is noted June 2003 (AR 138), there are no further relevant notations or records.

### B. CONSULTATIVE EXAMINATIONS

#### 1. Internist Sanford Selcon, M.D.

On November 15, 2004, plaintiff was examined by consultative internist Sanford Selcon, M.D., with the assistance of a translator.  AR 154-158.  Plaintiff stated that her chief complaints were: "(1) Body aches, and pains and numbness in her arms and legs, (2) Frontal headaches, and (3) Depression."  AR 154.  Plaintiff stated that she had experienced numbness in her arms, legs, hands and feet, and decreased memory for the last 5 to 10 years; that she quit her last job because she had difficulty with language, and cannot work because of her problems with numbness and memory; that she has had chronic low back pain and chronic frontal headaches for several years; and that she is depressed, with difficulties coping and being with others.  Plaintiff recounted an automobile accident which did not require surgery but caused her disorientation for a period of two days; plaintiff could not remember the year or month of the accident.  Dr. Selcon noted plaintiff's current medications as "Motrin, carisoprodol ['Soma,' a muscle relaxant],[3] aprodine [decongestant], calcium, and o-PAP extra strength" (this appears to reference "APAP," which is hydrocodone, or Vicodin, prescribed for pain).  AR 154-155.  Dr. Selcon found no abnormalities upon physical examination of plaintiff.  AR 156-157.

Dr. Selcon made the following functional assessment (AR 158):

> The number of hours that the claimant could sit in an 8-hour work period is without limitations.  The number of hours that the claimant could stand/walk in an 8-hour work period is without limitations.  The amount of weight that the claimant could lift/carry is without limitations. These are no postural, manipulative, visual, communicate, or workplace environmental limitations.

////

---

[3] All prescriptive descriptions are taken from the Physicians' Desk Reference ("PDR"), 63rd ed. (2009).

6

1                      2. <u>Psychiatrist Reynaldo Abejuela, M.D.</u>

On December 7, 2004, a psychological assessment of plaintiff was conducted by psychiatrist Reynaldo Abejuela, M.D., at the request of the Commissioner. AR 160-167. The assessment was conducted with the assistance of a certified interpreter.

Plaintiff stated that her chief complaints were "multiple physical problems," and "depression and anxiety." AR 160. She stated that she had stopped working as a sander due to her "physical problems, including low back pain, numbness, diabetes, 'I cannot hold things. I also have headaches.'" *Id.* Plaintiff told Dr. Abejuela that she "feel[s] sad and anxious. It started in 1994 when my husband died. . . . This year I'm having a lot of problems with my kids. I also have money problems." AR 161. "Regarding her activities of daily living, [plaintiff] stated, 'I do house chores. I talk to my kids. I have five kids, four at home; the eldest is over 20 years old. The youngest is 13.'" *Id.*

Dr. Abejuela described plaintiff's subjective complaints as follows (AR 161):

> The patient describes her mood as feeling mildly depressed. Her sleep is described as a few hours. Her energy is fair. There are no significant changes in her appetite and weight although she has lost some weight. [¶] There are no guilt feelings, no helplessness, worthlessness or hopelessness, no suicidal ideation or suicidal intention or plan. Her concentration and memory are sometimes impaired. Negative for anhedonia.

Dr. Abejuela noted plaintiff's statement, "I hear things at times," but observed that she was unable to elaborate and did not appear to be responding to internal stimuli. AR 161, 163, 166. Dr. Abejuela made the following diagnosis pursuant to the American Psychiatric Association's multiaxial framework (AR 164):[4]

---

[4] The American Psychiatric Association's Multiaxial Assessment is set forth in the Diagnostic and Statistical Manual of Psychiatric Disorders, ("DSM-IV") (4th Ed. 2005), at pp. 27-37:

        Axis I:        Clinical Disorders
                            Other Conditions That May Be a Focus of Clinical Attention
        Axis II:      Personality Disorders

Axis I: Depressive Disorder, NOS[5] with Anxiety, Mild
Axis II: Deferred
Axis III: Multiple physical problems. Deferred to the appropriate specialist.
Axis IV: Psychosocial Stressors: Dealing with physical problems and death of husband in 1994.
Axis V: Refer below.

Although Dr. Abejuela did not attribute a GAF score to plaintiff, he found that plaintiff's "relations with family, friends and neighbors are reportedly good," that she "has no impairment in her occupational and social functioning from the psychiatric standpoint," and that her "psychiatric limitations range from none to mild." AR 162, 165, 166.

Dr. Abejuela made the following specific findings (AR 165-166):

1. There is no mental restriction in the patient's daily activities.
2. There are mild mental difficulties in maintaining social functioning.
3. The patient's concentration, persistence, and pace are slightly impaired.
4. There are no repeated episodes of emotional deterioration in work-like situations.
5. The patient's ability to understand, carry out, and remember simple instructions is not impaired as long as there is an interpreter.
6. The patient's ability to understand, carry out, and remember complex instructions is mildly impaired.
7. The patient's response to co-workers and supervisors, and the public is slightly impaired.
8. The patient's ability to respond appropriately to usual work situations is slightly impaired.
9. The patient's ability to deal with changes in a routine work setting is slightly impaired but does not preclude function.

////

////

////

---

Mental Retardation
Axis III: Medical Conditions
Axis IV: Psychosocial and Environmental Problems
Axis V: Global Assessment of Functioning ("GAF").

The GAF Scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Id.* at 34.

[5] "Not otherwise specified."

8

### 3. Psychologist Michelina Regazzi, Ph.D.

On August 25, 2006, psychologist Michelina Regazzi, Ph.D., interviewed plaintiff at the request of plaintiff's attorney, with the assistance of plaintiff's friend, Sone Phanhmany, as interpreter. AR 196-199.

Plaintiff reported to Dr. Regazzi that she had never been treated for psychiatric problems; that her complaints included frequent headaches, dizziness, and poor memory; and that her medications were Ibuprofen, a sleeping pill, and "other medications that she has at home." AR 196. Plaintiff stated that her husband died in 1994; that three of her five children live with their own families in Sacramento; that her 23-year-old son lives at home and has psychiatric problems for which he receives SSI; and that her youngest child, a 15-year-old daughter, also lives at home. AR 196-197. Plaintiff stated that after her husband died, she worked for about a year cutting fruit in a restaurant, but her "body ached;" then she performed work as a sander in a factory, but "quit because she was dropping stuff too frequently." AR 197. Plaintiff stated that she is independent in bathing and grooming; that she does most of the cooking, and cleans a bit, but her children do most of the cleaning; that she does not drive, or take buses alone for fear of getting lost; that her daughters take her grocery shopping once a week, handle her money transactions, and pay her bills. *Id.* Plaintiff stated that she "has insomnia due to body pain and numbness in her arms;" that she sleeps late and naps during the day; but that her appetite is fine. AR 197-198. Plaintiff "admitted that she enjoys visits from her grandchildren." AR 197.

Dr. Regazzi found plaintiff's "affect was flat and mood appeared apathetic." AR 198. "When asked about her predominant mood, she expressed that she gets upset a lot because of her son who is mentally ill. She gets upset because she cannot read or speak English. She further expressed that she gets upset because she has no[] husband to take care of the family. Her friend expressed that he never sees her smile." AR 198.

////

////

9

Dr. Regazzi attempted to administer the Bender Gestalt test but plaintiff "was hesitant to start and when she finally reluctantly did so, expressed 'I don't want to do this,' and stopped on the second design." AR 198.

Dr. Regazzi made the following diagnosis pursuant to the American Psychiatric Association's multiaxial framework (AR 163):

```
Axis I:     300.81 Undifferentiated Somatoform Disorder
            311 Depressive Disorder, NOS
Axis II:    Deferred
Axis III:   Headaches; dizziness; numbness in arms, by report
Axis IV:    Single mother; limited income
Axis V:     GAF = 58[6]
```

Dr. Regazzi explained that, "[w]ith regard to [plaintiff's] diagnoses, results suggest the presence of numerous somatic complaints but with no clear medical explanation. She does have clinical depression and it is strongly suspected that she has somatization in that strong, negative emotions are suppressed which causes or worsens physical symptoms." AR 198-199.

Dr. Regazzi made the following assessment of plaintiff's capabilities and limitations (AR 199):

> Daily Living Activities: [Plaintiff] is capable of carrying out basic personal care tasks. She can carry out certain daily living tasks such as simple chores and cooking. She would need assistance with financial and business matters, and any tasks that require written communication. She is unable to travel independently. Daily living skills are moderately impaired.
>
> Concentration/Persistence/Pace: [Plaintiff] likely has the ability to focus on discrete simple tasks since attention problems are not suspected. Her ability to persist despite difficulty [sic] is severely impaired. Her pace is also considered to be severely impaired when compared with her peers.
>
> Social Functioning: [Plaintiff] is capable of interacting appropriately with others. There do not appear to be any major impairments in her social functioning.
>
> Ability to Learn/Work: [Plaintiff] is illiterate and this will severely limit her learning pace. Due to her depression and her somatic disorder, she is expected to

---

[6] A GAF 51 to 60 denotes, "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers)." DSM-IV, at p. 34.

have moderately severe to severe impairment in her ability to maintain full-time competitive employment. For instance, due to the link between her depression and her physical symptoms, as her depression worsens so also can her physical limitations be expected to worsen. She can be expected to have impaired initiative and motivation, work productivity, and steady and reliable attendance due to her depression.

C. STATE AGENCY REVIEWS

On February 5, 2005, David Pong, M.D., reviewed the record and opined that plaintiff's alleged physical and mental impairments were "non-severe." AR 173-174. On April 19, 2005, George Jansen, M.D., recounted plaintiff's treatment and diagnostic history and concluded that plaintiff had "frontal headaches" but did not have a severe physical impairment; Dr. Jansen recounted plaintiff's complaints of mental impairment but made no opinion regarding its severity. AR 192-193.

On February 15, 2005, David Gross, M.D., reviewed the record and opined that plaintiff did not have a severe physical or mental impairment. Dr. Gross opined that "[t]he current psych. CE [consultative exam] reveals a benign non-severe mental condition currently. There is no evidence for any 12 month period of severe impairment in the past. Psychiatric impairment is non-severe." AR 171-172. On April 20, 2005, Joseph Schnitzler, M.D., also reviewed the record and affirmed Dr. Gross's opinion that plaintiff does not have a severe mental impairment. AR 177-189. Dr. Schnitzler opined that plaintiff had depressive symptoms, with mild limitations in activities of daily living, social functioning, and maintaining concentration, persistence and pace, but that the impairment was not severe. AR 177, 180, 187.

D. THIRD PARTY STATEMENT

A third party report was completed by H. Phanhmany, a friend of plaintiff's who stated that she has known plaintiff more than 20 years and visits her once a month. AR 68-76. Ms. Phanhmany stated that since the death of plaintiff's husband, plaintiff "woke up with emptyness brain she cannot do any much at all, don't even know how to make up herself." AR 68. Ms. Phanhmany stated that plaintiff has problems with memory (left food to burn, left water running,

needs reminders to care for herself, take medication, go to medical appointments), sleeping (wakes up often and thinks about raising her children by herself), and doing chores (does not finish small tasks ). Ms. Phanhmany reported that plaintiff is unable to go out alone because "she cannot remember how to get back to her own place;" that plaintiff's daughter takes her shopping once a week, and that plaintiff does not handle her own finances. Ms. Phanhmany estimated that plaintiff can pay attention for 30 to 45 minutes. AR 73. Ms. Phanhmany noted that plaintiff has limitations in virtually every physical and mental ability, but can walk 500 yards before needing to take a break. *Id.* In summary, Ms. Phanhmany recounted that plaintiff grew up in a poor family in Laos, later escaped to Thailand where she lived in a refugee camp for three years, came to the United States and raised her children on AFDC, then, after the death of her husband, plaintiff "try to work for couple times it doesn't work because she have had luangage problem she cannot read, write, and speak an Englishe, that's all her short storie." AR 76 [*Sic*].

V. DISCUSSION

The Supreme Court found in *Bowen v. Yuckert*, *supra,* 482 U.S. 137, that the severity regulation, at step-two of the Commissioner's sequential evaluation analysis,[7] validly places

---

[7] The requirements of the step-two severity determination as set forth by the Ninth Circuit are as follows:

> At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a medically severe impairment or combination of impairments. *Yuckert,* 482 U.S. at 140-41 []. The Social Security Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the Commissioner's regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 404.1521(a) (1991). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 104.1521(b); Social Security Ruling 85- 28 ("SSR 85-28"). Important here, at the step two inquiry, is the requirement that the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe. *See* 42 U.S.C. §

12

upon claimants the burden of demonstrating that their medically determinable impairments are severe. If a claimant is unable to make this showing, she is ineligible for benefits.

The severity determination is based on a review of the entire record. The Commissioner "is required to consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 1382c(a)(3)(G); *see also* 20 C.F.R. § 416.923; *Lester v. Chater, supra*, 81 F.3d at 829. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[8] 20 C.F.R. § 416.921(a).

Plaintiff does not challenge the ALJ's assessment of her physical impairments, only that they were allegedly not considered in combination with her mental impairments. Substantial evidence supports the ALJ's finding that plaintiff's physical impairments of back strain and headaches were not, in themselves, severe. The ALJ reasoned, "The claimant alleges physical difficulties from back pain and headaches which cause her to be unable to work; however, the record is devoid of objective, clinical and laboratory findings which would support debilitating levels of these conditions. Upon examination no neurological findings, atrophy or sensory loss were noted and no restrictions were imposed. Despite the claimant's allegations of back pain,

---

> 423(d)(2)(B) (Supp. III 1991); Social Security Ruling 868 ("SSR 86-8"). See also SSR 85-28. Also, he is required to consider the claimant's subjective symptoms, such as pain or fatigue, in determining severity. SSR 88-13; 20 C.F.R. § 404.1529(d)(2) (effective 11/14/91) (adopting SSR 88-13). Finally, the step-two inquiry is a de minimis screening device to dispose of groundless claims. *Bowen v. Yuckert*, 482 U.S. at 153-54 []. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." See SSR 85-28; *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28).

*Smolen v. Chater*, 80 F. 3d 1273, 1290-91 (9th Cir. 1996); *see also* SSR 96-3p (1996).

[8] The ability to work refers to "the abilities and aptitudes to do most jobs," including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying and handling, as well as the capacity to see, hear, speak, understand, carry out and remember simple instructions, use judgment, respond appropriately to supervisors, coworkers and usual work situations, and to deal with changes in a routine work setting. 20 C.F.R. §416.921(b).

13

she reported that she does some cooking, household chores and shopping." AR 16. Plaintiff does not refute these findings.

Similarly, substantial evidence supports the ALJ's findings regarding plaintiff's complaints of extremity pain and numbness. Summarizing the findings of Dr. Selcon, the ALJ noted (AR 14):

> Sensation was normal to palpation of the extremities. There was no evidence of numbness in the upper or lower extremities. Range of motion was grossly normal in the back, shoulder, elbows, hips, knees, ankles, wrists and hands. Motor strength was normal 5/5 in the upper and lower extremities. Gait was normal with negative Romberg. Dr. Selcon reported a prior normal cervical x-ray in June 2003. Dr. Selcon noted a reported history of chronic upper and lower extremity numbness of unclear etiology was not evident upon examination.

The ALJ also noted the conclusions of the State Agency medical consultants that "although [plaintiff] has some discomfort, [she] is able to move about and use her arms, hands and legs in a satisfactory manner. The medical consultants assessed that the claimant's physical impairments were, therefore, essentially non-severe and would not impede work activity." AR 14. Again, plaintiff does not refute these findings.

Finally, plaintiff does not contest the findings of the ALJ regarding her alleged diabetes. As the ALJ found, consistent with the medical record, plaintiff "takes no medication for such and rather has been instructed to maintain a proper diet to avoid the development of the illness." AR 16-17.

It is plaintiff's principal contention that the ALJ failed accurately to weigh the medical opinion of Dr. Regazzi, and improperly relied on the opinion of Dr. Abejuela; that the ALJ "carefully culled Dr. Regazzi's report and only cited those limitations which supported his finding of not disabled," in contravention of the Ninth Circuit's holdings that an administrative law judge may not simply "pick and choose" among the evidence.[9]

---

[9] "The ALJ cannot selectively rely on only those portions of the treatment record that support his ultimate conclusion. *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004) ('The ALJ is not entitled to pick and choose from a medical opinion, using only those

14

In assessing plaintiff's alleged mental impairments, the administrative law judge properly adhered to the analysis set forth in 20 C.F.R. § 416.920a. This regulation requires that the ALJ rate the degree of functional limitation resulting from a medically determinable mental impairment in accordance with the following four functional areas (the "B criteria"): Activities of daily living; Social functioning; Concentration, persistence, or pace; and Episodes of decompensation. A five-point scale is used to rate the degree of limitation in the first three functional areas ("None, mild, moderate, marked, and extreme"). A four-point scale is used to rate the degree of limitation in the fourth functional area ("None, one or two, three, four or more). A rating of "none" or "mild" in the first three functional areas, and "none" in the fourth area, will generally direct a conclusion that the mental impairment is not severe, unless other evidence indicates that there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 416.920a (d)(1).

The ALJ found "slight" limitations in plaintiff's activities of daily living; "mild" difficulty in maintaining social functioning and "slight" impairment in her response to co-workers and supervisors; "mild" limitations in plaintiff's concentration, persistence, and pace; and "no evidence" of "any repeated or extended episodes of decompensation." AR 15-16.

////

////

////

---

parts that are favorable to a finding of nondisability') (citing *Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984)); *see also Gallant [v. Heckler]*, 753 F.2d [1450]at 1456 [9th Cir. 1984] (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion); *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983) (while the ALJ is not obligated to 'reconcile explicitly every conflicting shred of medical testimony,' he cannot simply selectively choose evidence in the record that supports his conclusions); *Whitney v. Schweiker*, 695 F.2d 784, 788 (7th Cir. 1982) ('[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion.') (citation omitted); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion 'simply by isolating a specific quantum of supporting evidence')." *Hendrickson v. Astrue*, 2008 WL 4852970, 5 (C.D. Cal. 2008).

These findings are expressly supported by the conclusions of examining psychiatrist Dr. Abejuela and State Agency physician Dr. Schnitzler.[10] The ALJ also relied on the report of Dr. Regazzi throughout his analysis of the "B criteria," except in assessing the functional area of concentration, pace and persistence. AR 16.

Plaintiff asserts that the ALJ should have credited Dr. Regazzi's findings that: (1) while plaintiff "likely has the ability to focus on discrete simple tasks since attention problems are not suspected [,] [h]er ability to persist despite difficulty is severely impaired [and] [h]er pace is also considered to be severely impaired when compared with her peers;" and (2) plaintiff "is illiterate and this will severely limit her learning pace. Due to her depression and her somatic disorder, she is expected to have moderately severe to severe impairment in her ability to maintain full-time competitive employment. . ." AR 199. Pl.'s Mem., at pp. 11-12. Plaintiff directs the court's attention to the Commissioner's Program Operations Manual, DI 25020.010 (Mental Limitations), specifically, the "Mental Abilities Critical for Performing Unskilled Work," items (e) and (i):

> (e) [M]aintain regular attendance and be punctual within customary tolerances. (These tolerances are usually strict.) Maintaining a schedule is not critical.
> (i) [C]omplete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (These requirements are usually strict.)

Pl.'s Mem., at p. 13. These are two of the fourteen critical abilities described under this heading. Dr. Regazzi's findings do not support a finding of limitations under (e) (regular attendance and punctuality), but do support a finding under (i).

---

[10] While administrative law judges are not "bound" by the findings of State agency medical consultants, such consultants are nonetheless "highly qualified . . . experts in Social Security disability evaluation" whose findings must be considered. 20 C.F.R. § 416.927(f)(2)(i); *see also* SSR 96-6p ("Findings of fact made by State agency medical and psychological consultants . . . regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining sources" by administrative law judges who "must explain the weight given to these opinions in their decisions").

16

The ALJ did not expressly reject the findings of Dr. Regazzi concerning plaintiff's pace and persistence, but his implicit rejection of these findings is supported by the following factors. First, Dr. Regazzi, in contrast to Dr. Abejuela, based her opinion on a "clinical interview" only, without any objective testing. It is appropriate to accord less weight to a medical source opinion that lack objective findings. 20 C.F.R. § 416.927(d)(3).[11] Nor, as an alternative, did Dr. Regazzi review plaintiff's treatment records. *Id.* Second, plaintiff's refusal to cooperate in Dr. Regazzi's attempted administration of the Bender-Gestalt test undermines plaintiff's credibility and Dr. Regazzi's reliance upon plaintiff's statements only. *See, e.g., Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (ALJ properly discredited plaintiff's testimony based in part on her lack of cooperation and "poor effort" during consultative examinations); *Thomas v. Barnhart, supra,* 278 F.3d at 959 (plaintiff's efforts to impede accurate testing of her limitations supported ALJ's determination that plaintiff lacked credibility). These authorities also support the ALJ's express finding that plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." AR 16. Third, the ALJ properly accorded more weight to the consultative examiner with the greater expertise; Dr. Abejuela is a psychiatrist, Dr. Regazzi a psychologist. *See, e.g.*, 20 C.F.R. § 416.927(d)(5) (more weight is generally accorded to the opinion of a specialist about medical issues related to his or her area of specialty). Accordingly, the ALJ's implicit rejection of Dr. Regazzi's findings that plaintiff is severely impaired in her ability to "persist despite difficulty," or to maintain pace in learning and working, is supported by substantial evidence in the record.

/////

---

[11] 20 C.F.R. § 416.927(3) ("Supportability") provides in full: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. Furthermore, because nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources."

17

Plaintiff also contends that the ALJ failed adequately to credit Dr. Regazzi's findings that plaintiff's depression will likely worsen and result in increased physical limitations, due to plaintiff's tendency toward somatization. Plaintiff relies on several sources outside the record to argue that psychosomatic disorders are common in the South East Asian community. Plaintiff also relies on the diagnostic criteria for Undifferentiated Somatoform Disorder set forth in the DSM-IV. However, for the reasons discussed above, the ALJ properly discredited the opinion of Dr. Regazzi.

Plaintiff further contends that the ALJ improperly discredited her subjective complaints, and the supporting statement of plaintiff's friend, Ms. Phanhmany.

In evaluating the credibility of a claimant's subjective complaints, the ALJ must first consider the objective medical evidence and the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *Bunnell v. Sullivan*, 947 F.2d 341, 344-347 (9th Cir. 1991) (*en banc*). The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007); *Smolen v. Chater*, *supra*, 80 F.3d at 1284. Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing. *Lester v. Chater, supra*, 81 F.3d at 834.

Additionally, the Commissioner is required to consider observations by non-medical sources regarding how an impairment may affect a claimant's ability to work. 20 C.F.R. § 416.913(d)(4) (evidence from non-medical sources may be relied upon to show severity and impact of impairment). If the ALJ discredits the testimony of a lay witnesses, he must give reasons that are germane to that witness. *Dodrill v. Shalala*, 12 F.3d 915, 918-919 (9th Cir. 1993). However, if the ALJ fails to discuss the testimony of a lay witnesses, the error is harmless only if no reasonable ALJ, when fully crediting the testimony, would come to a

different disability determination. *Stout v. Commissioner*, 454 F.3d 1050, 1056 (9th Cir. 2006).

In addition to the clear and convincing reasons set forth above, the ALJ discredited plaintiff's subjective complaints associated with depression and somatoform disorder for the following reasons: "As to her emotional problems, practitioners have not determined them to be debilitating. They noted no significant problems with task completion, interaction with others, responding appropriately in work situations and dealing with changes in routine work settings. The claimant testified that she has not entered counseling for any emotional problems. Despite the unfortunate loss of her husband in 1994, the claimant has been able to raise her five children since that time with the youngest now 15." AR 17. These findings address all the *Bunnell* factors: lack of objective medical evidence, lack of treatment, lack of demonstrated functional restrictions, and daily activities inconsistent with the professed inability to perform basic work activities. *See also Rollins v. Massanari*, 261 F.3d 853, 860 (9th Cir. 2001) (unexplained failure to seek treatment may negatively impact a credibility determination).

In addition, while the ALJ erred in failing to acknowledge the third party statement of Ms. Phanhmany, the court finds that the omission was harmless because no reasonable ALJ, fully crediting the testimony, would come to a different disability determination. *Stout, supra,* 454 F.3d at 1056. The court further notes that plaintiff's illiteracy and inability to communicate in English, emphasized by Ms. Phanhmany, may be relevant in assessing whether a claimant can perform more than unskilled work,[12] but is not a factor in assessing the severity of claimant's alleged physical and mental impairments.

It is the role of the administrative law judge to resolve conflicts in the medical evidence.
////

---

[12] *See, e.g.*, 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(i) (illiteracy or inability to communicate in English may limit an individual's vocational scope, but is least significant in considering the ability to perform the work functions of unskilled work); *see also* 20 C.F.R. § 416.964, (requiring the Commissioner to consider a person's ability to communicate in English when evaluating "what work, if any, he or she can do").

"Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982); *see also Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005).

In sum, while plaintiff's treating records demonstrate consistent subjective complaints of headaches, back pain, and numbness in her arms and legs, consistent with her testimony, there is no evidence to support a finding that these symptoms, together with her later alleged depression, singly or in combination, more than minimally limit plaintiff's ability to perform basic work activities. While the ALJ found medically determinable impairments – back strain, headaches, depression and somatoform disorder – substantial evidence supports the ALJ's conclusion that plaintiff has failed to meet her burden of demonstrating that these impairments are severe either singly or in combination.

## VI. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment, Dckt. No. 19, is denied;

2. The Commissioner's cross-motion for summary judgment, Dckt. No. 20, is granted; and,

3. The Clerk is directed to enter judgment in favor of the Commissioner.

DATED: March 20, 2009.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE